1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8
9

RICHARD F. BOWEN, JR.,                          CV F   01-5483 DLB HC

10
                    Petitioner,                 ORDER DENYING PETITION FOR WRIT OF
                                                HABEAS CORPUS AND DIRECTING THE
11       v.                                     CLERK OF COURT TO ENTER JUDGMENT
                                                IN FAVOR OF RESPONDENT
12

GAIL LEWIS,                                     [Doc. 1]

13
                    Respondent.
14 _____/

15

16       Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant

17 to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the

   jurisdiction of the United States Magistrate Judge.
18

## PROCEDURAL BACKGROUND[1]
19

20       On October 17, 1996, following a jury trial in the Kern County Superior Court, Petitioner

21 was convicted of possession of methamphetamine in violation of California Health and Safety

   Code section 11377, subdivision (a), and unlawfully driving a motor vehicle with a suspended
22
   license in violation of California Vehicle Code section 14601.1, subdivision (a).  It was further
23
   found true that Petitioner had suffered two prior serious felonies within the meaning of California
24
   Penal Code section 667, subdivisions (c) through (j), and section 1170.12, subdivisions (a)
25
   through (e).  (CT 290.)
26

27 _____

28       [1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, and
   Petitioner's traverse.

On October 25, 1996, Petitioner filed a motion to strike one of the prior convictions based on ineffective assistance of trial counsel.  (CT 297.)  The motion was denied on October 29, 1996.  (CT 312.)

On November 6, 1996, Petitioner's renewed motion to strike the prior was again denied, and Petitioner was sentenced to 25 years to life on count 1.  Petitioner was also sentenced to six months in jail on count 2, concurrent to count 1.  (CT 346-347, 354.)

Petitioner filed a timely notice of appeal to the California Court of Appeal for the Fifth Appellate District.  The judgment was affirmed on October 27, 1999.  (Respondent's Exhibit A, attached to Answer.)  On January 25, 2000, the California Supreme Court denied the petition for review.  (Respondent's Exhibit B, attached to Answer.)

Petitioner filed the instant petition for writ of habeas corpus on April 24, 2001.  Respondent filed an answer on November 21, 2001.  Petitioner filed a traverse on April 1, 2002.  A supplemental traverse was filed on December 23, 2002.  Then on May 21, 2004, the Court ordered that the Office of the Federal Defender be appointed to file a supplemental traverse to Respondent's answer.[2]  Petitioner, through appointed counsel, filed a second supplemental traverse on November 8, 2004.[3]

<u>STATEMENT OF FACTS</u>[4]

California Highway Patrol officer David Cabrera was working at approximately 9 p.m. on July 2, 1996, when he saw a vehicle drive by without tail lights.  Officer Cabrera followed the vehicle and turned on his flashing lights and shined his spotlight into the vehicle.  The driver of the vehicle made several movements in the direction of the front passenger floorboard.  The driver [Petitioner], pulled his car to the side of the road.
Officer Cabrera walked up to the driver's side of the vehicle and contacted [Petitioner], the lone occupant in the car.  Cabrera asked [Petitioner] for his

---

[2]  Specifically, the Court requested supplemental briefing regarding the burden of proof required to show prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), given Petitioner's circumstance that the testimony of the potential witness was never investigated or presented to the state court due to the conduct of his counsel at issue in this proceeding.  (Court Doc. 29, at 2.)

[3]  Petitioner was granted two extensions of time.  (Court Docs. 32, 34.)

[4]  The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District appearing as Exhibit A, of the Answer to the Petition for Writ of Habeas Corpus.  The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

driver's license and registration. [Petitioner] did not have a driver's license. Officer Cabrera asked [Petitioner] for a picture identification. [Petitioner] said he did not have anything. Officer Cabrera shined his flashlight into the car and saw a wallet on the right front floorboard. [Petitioner] retrieved the wallet and gave Officer Cabrera a picture identification from the wallet. [Petitioner] got out of the car and left the wallet in the car. Officer Cabrera asked [Petitioner] for permission to search the car and [Petitioner] consented. Officer Cabrera found a baggie containing an off-white chunky substance in a compartment of the wallet. [Petitioner] was arrested. The substance in the wallet was methamphetamine.

## DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

1  Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

2  will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

3  to, or involved an unreasonable application of, clearly established Federal law, as determined by

4  the Supreme Court of the United States;" or "resulted in a decision that was based on an

5  unreasonable determination of the facts in light of the evidence presented in the State Court

6  proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

7  the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

8  Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

9  because that court concludes in its independent judgment that the relevant state-court decision

10  applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

11  omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

12      While habeas corpus relief is an important instrument to assure that individuals are

13  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

14  (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

15  criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

16  Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

17  factual determinations must be presumed correct, and the federal court must accept all factual

18  findings made by the state court unless the petitioner can rebut "the presumption of correctness

19  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

20  S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

21  110 F.3d 1380, 1388 (9th Cir. 1997).

22  C.    Ineffective Assistance Counsel

23      Petitioner contends that trial counsel was ineffective in several respects including

24  advising him to reject the plea bargain offered the prosecutor, failing to request a continuance to

25  identify, locate, interview, and perhaps call as a witness Gilbert Rodarte, and requesting that the

26  trial court strike one of the prior convictions.

27      The law governing ineffective assistance of counsel claims is clearly established for the

28  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

1   151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

2   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

3   668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

4   the petitioner must show that counsel's performance was deficient, requiring a showing that

5   counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

6   the Sixth Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

7   representation fell below an objective standard of reasonableness, and must identify counsel's

8   alleged acts or omissions that were not the result of reasonable professional judgment

9   considering the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

10  (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

11  a strong presumption that counsel's conduct falls within the wide range of reasonable

12  professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v.

13  Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

14          Second, the petitioner must show that counsel's errors were so egregious as to deprive

15  defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must

16  also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

17  ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

18  1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

19  was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that

20  (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would

21  have been different.

22          A court need not determine whether counsel's performance was deficient before

23  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

24  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

25  prejudice, any deficiency that does not result in prejudice must necessarily fail.

26          Ineffective assistance of counsel claims are analyzed under the "unreasonable

27  application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d

28  1058, 1062 (2000).

1          1.      Advisement to Reject Plea Bargain

2          Petitioner contends that defense counsel rendered ineffective assistance at the

3  readiness/plea hearing on September 6, 1996, because counsel advised Petitioner to reject a plea

4  bargain offered by the prosecutor.  As Respondent submits, counsel had been recently appointed

5  only a few days after the public defender was removed due to a conflict on August 30, 1995.  At

6  the plea/readiness hearing, the prosecutor offered to strike one of the two prior conviction

7  allegations if Petitioner pled guilty.  The offer was good for that day only, but was rejected.

8  (9/6/96 RT 2.)  After his conviction, Petitioner filed a motion to strike the prior, alleging

9  ineffective assistance in that he was advised that his attorney, Ms. Blanton, believed the

10 prosecutor was bluffing about not renewing the offer.  (CT 297.)  In that motion, Petitioner

11 submitted a declaration under penalty of perjury that his counsel had advised him that the

12 prosecutor said the offer would not be renewed.  He also swore that his counsel had opined that

13 she wanted time to do additional investigation, and that she thought, based on her experience,

14 that the prosecutor was bluffing.  Petitioner declared that he would not have rejected the plea

15 bargain had he known that it would not be offered again.  (CT 301.)

16         In rejecting Petitioner's claim on direct appeal, the Court of Appeal held that Petitioner

17 had to prove not only that he would have accepted the plea, but that it would have been approved

18 by the trial court.  (Respondent's Exhibit A, at 10.)  In California, it is well-established that

19 "[j]udicial approval is an essential condition precedent to any plea bargain" negotiated by the

20 prosecution and the defense, and a plea bargain is ineffective unless and until it is approved by

21 the court.  People v. Stringham, 206 Cal.App.3d 184, 194 (1998); see People v. Orin, 13 Cal.3d

22 937, 942-943 (1975).  As the Court of Appeal pointed out, "[b]ecause this is a three strikes case,

23 it is governed by the strict plea bargaining requirements contained in sections 667 and 1170.12."

24 (Respondent's Exhibit A, at 10.)

25         As Respondent submits, assuming that Petitioner's declaration establishes a prima facie

26 showing that he would have accepted the plea (see CT 301), the state court correctly found that

27 Petitioner had failed to make any showing that the trial court would have accepted the plea

28 bargain.

As the trial court explained to Petitioner with regard to whether the proposed plea bargain would have been accepted,

> I can tell you just from my own experience, it's not unusual that when a District Attorney makes an offer which includes the deletion of a strike and it comes to the time for sentencing, with the probation officer's report indicating that there is a strike there and if they have the proof of the strike, the Court rejects those pleas on occasions, and even on this occasion there is no indication that the Court was going to accept this offer by the District Attorney's office, so I think we're just at a stage of speculation with respect to what was happening. . . .

(10/29/96 RT 65.)

In opposition, Petitioner argues that the judge at sentencing was not the same judge who presided at the readiness hearing, and therefore, the sentencing judge's receptivity to the plea bargain is irrelevant. As Respondent submits, Petitioner however has made no allegations and set forth no evidence tending to demonstrate that plea offers such as the one proposed at the readiness hearing were commonly approved by judges in Kern County in 1996. As stated by the Court of Appeal, Petitioner "has failed to establish a reasonable probability that his plea was authorized and/or would have been accepted by the trial court. His claim of ineffective assistance of counsel during plea negotiations therefore fails." (Respondent's Exhibit A, at 11.) The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

2.   Failure to Call Shamu as a Witness

Petitioner contends that counsel was ineffective at trial for failing to request a continuance so as to identify, locate, interview, and perhaps call as a witness Shamu, whose true name is Gilbert Rodarte.

In presenting a claim of ineffective assistance based on counsel's failure to call witnesses, Petitioner must identify the witness, U.S. v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, U.S. v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt. Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness would have testified to and how such testimony would have changed the outcome of the trial,

7

1    there can be no ineffective assistance of counsel).  The absence of affidavits from uncalled

2    witnesses puts a petitioner's claim at a disadvantage.  Howard v. O'Sullivan, 185 F.3d 721, 724

3    (7th Cir. 1999) ("failure to submit supporting affidavits from [the] potential witnesses would

4    severely hobble [the petitioner's] case.")

5        Defense counsel has a "duty to make reasonable investigations or to make a reasonable

6    decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  This

7    includes a duty to investigate the defendant's "most important defense." Sanders, 21 F.3d at

8    1457, and a duty adequately to investigate and introduce into evidence records that demonstrate

9    factual innocence, or that raise sufficient doubt on that question to undermine confidence in the

10   verdict. Hart v. Gomez, 174 F.3d 1067, 1079 (9th Cir. 1999).  However, the duty to investigate

11   and prepare a defense is not limitless; it does not necessarily require that every conceivable

12   witness be interviewed." Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995) (citations

13   and quotations omitted).  "A claim of failure to interview a witness . . . cannot establish

14   ineffective assistance when the person's account is otherwise fairly known to defense counsel."

15   Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986) (citations and quotations omitted).

16   When the record clearly shows that the lawyer was well-informed, and the defendant fails to state

17   what additional information would be gained by the discovery she or he now claims was

18   necessary, an ineffective assistance claim fails. Id.  Furthermore, "ineffective assistance claims

19   based on a duty to investigate must be considered in light of the strength of the government's

20   case." Id.

21       With regard to Petitioner's claim that defense counsel failed to investigate and call

22   Shamu as a witness in support of his defense, the Court of Appeal stated:

23            Assuming that counsel's failure to ascertain Shamu's true name was
          attributed to [Petitioner's] initial counsel's failure to investigate, assuming
24        counsel should have made  a motion to continue, and assuming that the trial court
          would have granted a continuance, [Petitioner] has not shown that he was
25        prejudiced.  There is nothing in the record to show that Gilbert Rodarte was in fact
          Shamu, there is nothing in the record to show that Shamu would have testified to
26        anything favorable to [Petitioner], and there is nothing in the record to show that
          Shamu would testify at all.  From such a record this court is left only to speculate
27        whether Shamu's testimony might have aided [Petitioner]. [Petitioner] has failed
          to prove he was prejudiced from his claim of ineffective assistance of counsel.

28

1  (Respondent's Exhibit A, at 12-13.)

2      To this Court, Petitioner has presented a declaration from Gilbert Rodarte who declares

3  that his nickname is "Shamu," that Petitioner's wife, Michelle Bowen, let him use her vehicle

4  and three days later, on July 1, 1996, he was arrested.  (Declaration of Gilbert Rodarte, attached

5  to Second Supplemental Traverse, at Court Doc. 35.)  Mr. Rodarte further declares that during

6  the time that he was using the car, several different people were in it and drove it, and it is

7  possible that some of those who had access to the car during those three days possessed

8  methamphetamine.  (Id.)  Mr. Rodarte does not indicate that he would have been willing to

9  testify if called upon.  (Id.)

10     Although the findings made by the Court of Appeal are contradicted by Mr. Rodarte's

11 declaration, Petitioner nonetheless has failed to demonstrate he suffered prejudice as a result of

12 defense counsel's failure to call Shamu as a witness.  As stated by the Court of Appeal, at trial

13 Petitioner and Michelle testified that Shamu had the car for over a week before Petitioner

14 retrieved it from the gas station.  When Petitioner's new counsel was appointed, Petitioner

15 informed her that Shamu was a material witness, but he did not know his real name. Petitioner's

16 new counsel learned that the public defender's office declared a conflict in Petitioner's case

17 because of Shamu.  The public defender would not release the true name of Shamu to

18 Petitioner's new counsel.  Trial began on October 15, 1996.  On October 16, 1996, Petitioner's

19 new counsel learned Shamu's true name, Gilbert Rodarte.  On October 17, 1996, Rodarte was

20 located at Wasco State Prison.  Petitioner's investigator was prohibited from speaking to Rodarte

21 without a court order.  Petitioner testified on October 17, 1996.  A verdict against Petitioner was

22 returned that afternoon.  Petitioner's counsel did not request a continuance during the trial

23 because she had not spoken to Rodarte and would not be able to make an offer of proof.

24     After Petitioner was found guilty, he filed an ex parte petition for an order authorizing an

25 interview with Rodarte at Wasco State Prison.  Petitioner wished to interview Rodarte in

26 preparation for a motion for new trial.  An order was filed authorizing the interview.  However,

27 Petitioner never filed a motion for new trial.

28     The evidence against Petitioner, even when viewed in light of Shamu's proposed

9

testimony was strong.  Officer Cabrera observed Petitioner driving a vehicle with no taillights.

After the spotlight was shined on Petitioner, officer Cabrera observed Petitioner leaning down

toward the passenger side floorboard. (RT 51.)  Petitioner indicated that he did not have a license

or any other identification with him.  (RT 53.)  Officer Cabrera then shined his flashlight in the

car and observed a wallet on the right front floorboard.  (Id.)  Petitioner then obtained the wallet

and gave officer Cabrera an ID from it. (RT 54.)  Officer Cabrera subsequently discovered

methamphetamine from the wallet.  (Id.)  The fact that Shamu would have testified that he had

possession of the vehicle days prior to this incident and that others drove it and may have left

methamphetamine in it, does not overcome the prosecution's strong evidence against Petitioner

and create a reasonable probability that the result of the proceedings would have been different.

Of note, Shamu does not indicate whether he would have in fact been willing to testify if called

upon.  Petitioner concedes such in his second supplemental traverse, arguing that although it is

true that Shamu might not have testified, it might not have been necessary pointing to submission

of other evidence counsel could have presented.  (Second Supp. Traverse, at 7.)  Specifically,

Petitioner argues as follows:

> Had the investigator obtained police reports, interviewed Mr. Dupee, taken a picture of the car which was still in the possession of Michelle, or identified the other people in the apartment who could confirm that Mr. Bowen had never driven the car before that night, confirmed that his stuff had been in the trunk, then perhaps, when coupled with copies of Shamu's use of the vehicle in a crime just days before, and his prior conviction for use of methamphetamine, the jury might conclude that Shamu had used the car, and the methamphetamine was his or one of the other people who had been in the car prior to [Petitioner's] retrieval of the vehicle.

(Second Supp. Traverse, at 7.)

In this vein, Petitioner's contentions are speculative, at best.  In any event, the evidence of

which Shamu would have testified to was present before the jury through testimony of Petitioner

and Michelle Bowen.  Petitioner testified that a week and a half prior to July 2nd, the car was in

his wife's possession and he had placed a bag of clothing and a fanny pack in the trunk of the car.

(RT 188.)  His wallet was located in his fanny pack.  (Id.)  Petitioner testified that his wife had

loaned her car to Shamu, Gilbert Rodarte. (RT 191.)  On the night in question, July 2nd, a phone

call was received that Michelle's vehicle was at the British Patroleum Station and Petitioner went

to pick it up. (RT 154, 193.) A few minutes after driving off in the vehicle, Petitioner was pulled over by police. (RT 194.) Petitioner testified that he had not inspected the vehicle and he had not seen his wallet. (RT 193-195.) Prior to being stopped on July 2nd, Petitioner had not seen the car and had only been in possession of it for about two minutes. (RT 194.) Thus, in sum, Petitioner's testimony was that his belongings, including his wallet was in the car prior to Shamu taking it, and when Petitioner was pulled over by police he had not inspected the vehicle and was unaware of the location of his wallet and that it contained methamphetamine.

Michelle Bowen testified that she loaned her car to Shamu so he could buy a pack of cigarettes, and he was gone with it for a week and a half. (RT 152.) On July 2nd, Michelle's daughter answered a phone call indicating that the vehicle was at the British Patroleum Station in Oildale. (RT 154.) Petitioner walked to pick up the car. (Id.)

Therefore, the possibility that the methamphetamine was placed and left in the vehicle while it was in the possession of Shamu was presented to the jury. This testimony was uncontested. Shamu's testimony would not have significantly altered the evidentiary posture of the case and was of minimal value. At best, Shamu could only testify that methamphetamine may have been left in the car, which adds nothing more than what was already in evidence. There was no contradictory testimony that Shamu had possession of the vehicle for approximately a week and a half and Petitioner had only gained possession of the vehicle minutes before being stopped. (See RT 240-241, 269.)

Defense Counsel, Nancy Blanton Sharp, declares that Petitioner and Michelle Bowen did not present well to the jury and she "believe[s] an independent confirmation of Shamu and his possession of the car would have created a reasonable doubt that [Petitioner] possessed the less than 1/4 gram of methamphetamine found in the car, for which he was sentenced to 25 years to life in prison." (Declaration of Nancy Blanton Sharp, attached to Second Supp. Traverse, at 2.) It is highly likely that Shamu would likewise not have presented himself well to the jury as he was a convicted felon and his credibility would likely have been at issue. Further, as noted by Respondent, it is highly unlikely that Shamu would have been willing to come forward and incriminate himself or others.

Based on the foregoing, Petitioner has failed to demonstrate a reasonable probability that, but for counsel's alleged error, the result of the proceedings would have been different.

       3.     <u>Failure to Discover Conflict of Interest</u>

Petitioner contends that if his public defender had diligently investigated the case and discovered the conflict early on in the proceedings, his new counsel would have been prepared at the readiness hearing to evaluate the offered plea and would have been able to locate Shamu in time to testify at trial.

In his second supplemental traverse, Petitioner argues that appointed counsel, Ms. Blanton, indicated that the public defender refused to identify Shamu's true name to her, so she was unable to discover that he was currently in custody, currently represented by the public defender, and that the victims of the crime he was charged with could identify the vehicle he was driving in as a small Toyota.

In rejecting this claim on direct appeal, the Court of Appeal held that because Petitioner had failed to show prejudice from counsel's alleged failure to be prepared at the readiness hearing or the failure to call Shamu at trial, Petitioner claim that counsel failed to discover the conflict which relied on those two instances of misconduct failed for lack of resulting prejudice. (Respondent's Exhibit A, at 13.)

For the reasons explained above, Petitioner's claim fails for lack of prejudice.  Because the failure to discover the identity and call Shamu as a witness did not prejudice Petitioner, this claim fails.

       4.     <u>Ineffective Assistance of Counsel at Sentencing Hearing</u>

Petitioner contends that defense counsel was ineffective at the sentencing hearing by failing to obtain the information regarding his prior convictions.  Prior to the sentencing hearing, counsel filed a motion to strike one of the prior convictions in the furtherance of justice.  The sentencing court stated that it was reluctant to do so since the record demonstrated that Petitioner had numerous probation violations, which presumptively indicated that Petitioner had continued to violate the law.  (11/6/96 RT 3-4.)  The sentencing court explained that if the probation violations were for simple failures to report, that would perhaps increase Petitioner's chances of

1   demonstrating that striking a strike would be in furtherance of justice, but counsel had failed to

2   bring to the court's attention the facts and circumstances of those violations.  (11/6/96 RT 6.)

3   Petitioner claims counsel should have either presented the facts of the probation violations, or

4   requested a continuance to do so.  (Petition, at pp. 12-13.)

5          In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

6                 Again, [Petitioner] has failed to show prejudice.  It is not possible to
        determine if it is reasonably probable a different result would have occurred if all
7       the information had been obtained on [Petitioner's] probation and parole
        violations because this court does not know what all the information would have
8       shown.  Furthermore, a review of the record available to this court, but not fully
        presented or argued at the sentencing hearing, demonstrates that [Petitioner's]
9       probation violations were based, at least in part, on violations of the law and it is
        highly unlikely the court would have reached a different result.
10                The probation officer's report sets forth that [Petitioner] was convicted of
        two counts of robbery (strikes) on December 5, 1983.  He was placed on four
11      years' probation.  He violated probation on March 12, 1985; April 14, 1989, and
        November 7, 1989.  On November 7, 1989, he was also sentenced to the
12      California Department of Corrections for escape with force.  (Cal. Penal. Code §
        4532, subd. (b).)  He was paroled on February 17, 1990, and violated parole on
13      October 22, 1990.
                  Included as an exhibit to the People's opposition to [Petitioner's] pretrial
14      motion to strike one of his strikes, is a probation officer's supplemental report
        prepared on January 17, 1989, and filed on April 14, 1989.  The report states that
15      on March 12, 1985, (the date of [Petitioner's] first probation violation), the
        petition for revocation of probation and a bench warrant were filed.  The
16      revocation was based on three things: (1) [Petitioner] failed to keep or canceled
        three scheduled appointments, (2) [Petitioner] moved without telling his probation
17      officer, and (3) [Petitioner] was arrested for possession of a controlled substance
        and possession of a syringe.
18                [Petitioner] was arrested on December 15, 1998; officers were checking on
        a reported stolen vehicle.  They were told [Petitioner] was the driver of the
19      vehicle. [Petitioner] gave the officers two false names.  Others identified
        [Petitioner] as the driver of the vehicle.  Inside the vehicle officers found a
20      handgun under the passenger seat; two hash pipes in plain view; and a brown
        paper bag containing three syringes, a scale, and methamphetamine.  This report
21      was filed on the date of [Petitioner's] second probation violation.  The current
        probation report shows that the November 7, 1989, probation violation coincides
22      with [Petitioner's] sentence to prison for escape by force.  Thus, it is clear that
        [Petitioner's] probation violations were based at least in part on [Petitioner's]
23      continuing violations of the law and were not merely violations for a failure to
        report.  The trial court indicated that it would not find a furtherance of justice by
24      striking a strike if [Petitioner's] probation and parole violations indicated that
        [Petitioner] continued to violate the law after his robbery convictions.

25

26   (Respondent's Exhibit A, at 14-16.)

27          For the reasons stated by the Court of Appeal, Petitioner has failed to demonstrate any

28   resulting prejudice, even assuming counsel was somehow ineffective.  Petitioner has failed to

13

1   demonstrate that the state court's assessment of prejudice was incorrect.  Nor is the state courts'

2   determination contrary to, or an unreasonable application of clearly established Supreme Court

3   precedent.

4   D.   Marsden Motion

5         Petitioner contends that the trial court erred in not hearing his Marsden motion for

6   substitution of counsel.  Petitioner claims that the court failed to hold a timely hearing and,

7   further, the delay contributed to the aforementioned claims of ineffectiveness for failure to

8   investigate and locate witnesses.

9         The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment

10  right to counsel and therefore is properly considered in a habeas proceeding. Bland v. California

11  Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), cert. denied, 513 U.S. 947, 115 S.Ct.

12  357 (1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir.2000).  It is

13  well settled that when a criminal defendant voices a seemingly substantial complaint about

14  counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's

15  dissatisfaction. See id. at 1475-76; United States v. Robinson, 913 F.2d 712, 716 (9th Cir.1990).

16  The Sixth Amendment, however, guarantees effective assistance of counsel, not a "meaningful

17  relationship" between an accused and his counsel.  See Morris v. Slappy, 461 U.S. 1, 14, 103

18  S.Ct. 1610 (1983).  The ultimate inquiry in a federal habeas proceeding is whether the petitioner's

19  Sixth Amendment right to counsel was violated. Schell v. Witek, 218 F.3d 1017, 1024-25 (9th

20  Cir.2000) (en banc).  The habeas court considers whether the trial court's denial of or failure to

21  rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict

22  between [petitioner] and his attorney had become so great that it resulted in a total lack of

23  communication or other significant impediment that resulted in turn in an attorney-client

24  relationship that fell short of that required by the Sixth Amendment." Id. at 1026.

25        As to the first part of Petitioner's claim, the state court found that because the attorney

26  that was the subject of Petitioner's Marsden motion declared a conflict and was removed on

27  August 30, 1996, the failure to hold a hearing became moot.  (Exhibit A, at 16.)  As to the second

28  part of the claim, the state court reiterated that because of the aforementioned failure to

1   demonstrate prejudice, the ineffectiveness aspect of the claim was groundless.  (Id.)

2          Petitioner argues that had the trial court heard his Marsden motion earlier on in the

3   proceedings, counsel would have discovered the identity of Shamu and could have presented the

4   evidence to the jury.  However, as stated by the Court of Appeal, Petitioner has not shown

5   prejudice from anything that occurred at the plea negotiations nor has he shown prejudice from

6   the failure to call his "key" defense witness.  Thus, Petitioner has not demonstrated that the

7   failure, if any, to timely consider his Marsden motion adversely affected the proceedings below.

8   The state courts' determination of this issue was not contrary to, or an unreasonable application

9   of, clearly established Supreme Court precedent.

10  E.     Instructional Error

11         Petitioner contends that the trial court erred when it denied his request to instruct the jury

12  that mere access to contraband is insufficient to establish the necessary dominion and control

13  over a substance to constitute possession.

14         A challenge to a jury instruction solely as an error under state law does not state a claim

15  cognizable in a federal habeas corpus action.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).

16  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the

17  ailing instruction by itself so infected the entire trial that the resulting conviction violates due

18  process.  See id. at 72.  Additionally, the instruction may not be judged in artificial isolation, but

19  must be considered in the context of the instructions as a whole and the trial record. Id.  The

20  court must evaluate jury instructions in the context of the overall charge to the jury as a

21  component of the entire trial process.  See United States v. Frady, 456 U.S. 152, 169 (1982)

22  (citing Henderson v, Kibbe,  431 U.S. 145, 154 (1977)).  Furthermore, even if it is determined

23  that the instruction violated the petitioner's right to due process, a petitioner can only obtain

24  relief if the unconstitutional instruction had a substantial influence on the conviction and thereby

25  resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710

26  (1993) (whether the error had a substantial and injurious effect or influence in determining the

27  jury's verdict.). See, Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of

28  demonstrating that an erroneous instruction was so prejudicial that it will support a collateral

15

1    attack on the constitutional validity of a state court's judgment is even greater than the showing

2    required to establish plain error on direct appeal." Id.

3            As stated by the Court of Appeal on direct review:

4            CALJIC No. 12.00, defining the elements of possession of a controlled
        substance, was read to the jury as follows:
5            Every person who possesses a controlled substance, mainly [sic]
        methamphetamine, is guilty of the crime of illegal possession of a controlled
6        substance, in violation of Health and Safety Code Section 11377(a).
             In order to prove such a crime, each of the following elements must be
7        proved:
             One, a person exercised control or the right to control a certain controlled
8        substance;
             Two, such person had knowledge of its presence;
9            Three, such person had knowledge of its nature as a controlled substance,
        and;
10           Four, the substance was in an amount sufficient to be used as a controlled
        substance.
11           There are two kinds of possession: Actual possession and constructive
        possession.
12           Actual possession requires that a person knowingly exercise direct
        physical control over a thing.
13           Constructive possession does not require actual possession but does
        require that a person knowingly exercise control or the right to control a thing
14       either directly or through another person or persons.
             One person may have possession alone or two or more persons together
15       may share actual or constructive possession.
             [Petitioner] asked the court to add the following at the end of CALJIC No.
16       12.00, 'However, proof of access to the thing without more is insufficient to . . .'
        The completion of the modification was not reported in the reporter's transcript.
17       In [Petitioner's] brief he states that the proffered modification to the instruction
        was that mere access to contraband does not constitute dominion and control
18       sufficient to establish possession.  For the sake of argument, we shall accept
        [Petitioner's] version in the brief.
19           The court refused [Petitioner's] proposed modification, stating that the
        instructions clearly convey that mere presence alone does not constitute a
20       violation.  Although rejecting the modification to the instruction, the court
        informed counsel that this was a proper area for argument to the jury.
21           [Petitioner] now claims the trial court erred in refusing to modify the
        instruction. [Petitioner] argues the court was obligated to give this requested
22       pinpoint instruction and he was prejudiced when the court did not give it.
        [Petitioner] posits under the instructions defining constructive possession, the jury
23       may have believed that the "thing" referred to was his wallet.  He claims that
        "[u]nder this meaning, if the jury believed [Petitioner] was aware that the wallet
24       was in the vehicle, they could have found that he constructively possessed the
        methamphetamine found within the wallet, despite his absence of knowledge of
25       its presence."
             The instructions as given do not support [Petitioner's] theory of how the
26       jury might have interpreted the evidence combined with the instructions.  The jury
        was clearly told that they must find that [Petitioner] had control of the controlled
27       substance and knowledge of its presence.  If the jury found that [Petitioner] had
        knowledge of the methamphetamine.
28           The trial court's refusal of [Petitioner's] proffered instruction was correct

on another ground because the instruction was contrary to law and was misleading.  Circumstances demonstrating [Petitioner's] access to drugs may be sufficient to demonstrate control of the substance.  It may be circumstantially inferred from the nature of one's access that one has control of an illegal substance.  This portion of [Petitioner's] proffered modification to the instruction was contrary to the law and should not have been given. [citation.]  While it is correct that dominion and control by itself is not sufficient to establish possession, this concept was clearly conveyed in the instructions given.  Trial courts are not required to give requested pinpoint instructions that do not further illuminate the legal standards at issue. [citation.]

(Exhibit A, at 16-18.)

As Respondent submits, Petitioner has failed to present any evidence, or even allegations, that the state court disposition of this claim was incorrect.  Federal case law demonstrates that he cannot make such a showing, as the instructions given were correct, and his proposed instruction was not.  A defendant is not entitled to any particular form of an instruction so long as the instructions given fairly and adequately cover his theories of defense.  United States v. Solomon, 825 F.2d 1292, 1295 (9th Cir. 1987); United States v. Ferris, 719 F.2d 1405, 1407-08 (9th Cir. 1983) (recognizing that "a defendant is not entitled to a mere presence instruction of his own phrasing").  As such, the state court disposition was neither contrary to nor an unreasonable application of federal law.

F.    Prosecutorial Misconduct

Petitioner contends that the prosecutor committed misconduct during the cross-examination of Petitioner by asking him about arming enhancements related to his robbery conviction, and by asking about the facts of his escape conviction.

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see, Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (quoting United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that

there is a reasonable probability that the error complained of affected the outcome of the trial -

i.e., that absent the alleged impropriety, the verdict probably would have been different.

As set forth by the Court of Appeal, during the questioning of Petitioner on direct-

examination, the following occurred:

> Q. [Defense Counsel]: Were you convicted of two counts of robbery in 1983 in case number CR 40696 out of San Bernardino County?
>
> A. [Petitioner] I believe that's the case number.
>
> Q. Was that later amended in 1989?
>
> A. Yes it was.
>
> [District Attorney]: Objection, your Honor.
>
> [The Court]: What's the basis?
>
> [District Attorney]: Relevance.
>
> [Petitioner]: It was reduced.
>
> [The Court]: The objection is overruled.
>
> [Defense Counsel]: Okay.
>
> [Defense Counsel]:
>
> Q. In 1989 it was reduced to second degree robbery; is that right?
>
> A. I believe it was second degree robbery without use or without armed or use.
>
> Q. You also have a conviction for escape arising out of that same case; is that right?
>
> A. It - - they was all the same?

(RT 208-209.)

On cross-examination by the district attorney, Petitioner was being questioned regarding

his prior convictions. The following occurred:

> Q. [District Attorney]: Okay. Now, there was some suggestion that this was reduced later?
>
> A. [Petitioner]: Yes, it was.
>
> Q. As you - - as it exists today, however, you still stand convicted of two counts of robbery, correct?
>
> [Defense Counsel]: Objection, calls for a legal conclusion.

[The Court]: Rephrase your question. The objection's sustained in the form of the question.

[District Attorney]:

Q. When you were first convicted, you were convicted of two counts of robbery with armed allegations, correct?

[Defense Counsel]: Objection.

[Petitioner]: I believe - -

[Defense Counsel]: Objection. I'm going to move that this - - that a mistrial be declared based upon the prosecutor misconduct, and I'd like a sidebar or a hearing outside the presence of the jury on this issue.

[The Court]: Motion for mistrial is denied.

[District Attorney]: He's already testified to this, your Honor. I need to clarify it.

[The Court]: Motion for mistrial is denied. The issue the jury has to decide is whether or not on or about November 2d, [sic] 1983, he was convicted of a crime of robbery, violation of Penal Code Section 211. The question goes to that particular aspect, please.

[District Attorney]:

Q. Let's just move on them. You were also - -

[Defense Counsel]: Your Honor, I'd like a limiting instruction, if the Court is not - - first I'd ask that that question and answer be stricken, and I'd like the jury admonished to disregard it, and if the Court is not inclined to do that then I'm requesting a limiting instruction.

[The Court]: Just a moment. I want to hear just the legal objection. I don't want to hear everything that is going to go in there.

A question is not evidence, and the jury will be admonished of that. The question is not evidence. There was no answer given to the question that was asked.

You will be admonished that a question is not evidence. You must not consider that. That is the law, that is the state of your role as jurors.

(RT 211-212.)

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

> Although it was error for the prosecutor to refer to the robberies as armed robberies when an agreement had been reached that such a reference would not be made, the error was not prejudicial. It was the [Petitioner] who first mentioned the arming allegations when he testified that his robbery convictions were reduced to second degree robbery "without use or without armed or use." The [Petitioner] broached the subject of having his conviction reduced; this could even be viewed as having opened the door to the questions asked by the district attorney. But, even if it is viewed as not opening the door, [Petitioner] was not prejudiced. The jury was aware that [Petitioner] was not an upstanding member of the community,

having properly learned that he had been convicted of two counts or robbery and one count of escape by force.  A robbery conviction by its nature implies a forcible event.  Reference to the arming allegations added little to the picture of [Petitioner] already portrayed to the jury based on admissible evidence. [Petitioner's] "bad boy" image was not significantly increased by reference to the arming allegations.  Furthermore, the current crime did not involve force or arming allegations, thus the inference that [Petitioner] may have been armed during his previous convictions did not have the effect of implying that [Petitioner] engaged in the current crime since the two situations are so dissimilar. Also, the jury was admonished at the time of the error and later instructed that a question is not evidence and they must not consider it. [Petitioner] did not object to the prosecutor's comment during closing argument.  Generally, the failure to object waives a claim of prosecutorial misconduct on appeal because the trial court should be given the opportunity to cure any harm by giving an appropriate instruction. [citations.]

(Exhibit A, at 22.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  As stated by the Court of Appeal, Petitioner himself opened the door to the arming enhancement and cannot now claim that he was somehow prejudiced because the jury heard the information.  Further, whether Petitioner was armed or unarmed had little relevance to the instant crime of possession of methamphetamine, diminishing any prejudicial impact.

G.   Cruel and Unusual Punishment

Petitioner contends that California's Three Strikes law violates the Eighth Amendment prohibition against cruel and unusual punishment and that his sentence of 25 years to life under the three strikes law resulted in cruel and unusual punishment.

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment.  The Supreme Court recently decided two cases which discuss the clearly established federal law applicable to California Three Strikes cases.  See Ewing v. California, 538 U.S. 11 (2003); Lockyer v. Andrade, 538 U.S. 63 (2003).

In Andrade, the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 73. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent

1  path for courts to follow." Id.

2  The Supreme Court held that "the only relevant clearly established law amenable to the

3  'contrary to' or 'unreasonable application of' frame work is the gross disproportionality

4  principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and

5  'extreme' case." Id.   The Court analyzed Andrade's sentence under Rummel v. Estelle, 445 U.S.

6  263 (1980), Solem v. Helm, 463 U.S. 277 (1983) and Harmelin v. Michigan, 501 U.S. 957

7  (1991), and held that the state court "did not confron[t] a set of facts that are materially

8  indistinguishable from a decision of this Court and nevertheless arrive at a result different from

9  our precedent." Id. at 73-74.  Using section 2254(d)(1)'s "unreasonable application" clause, the

10  Court also held that it was not objectively unreasonable for the California Court of Appeal to

11  conclude that the contours of the gross disproportionality principle permitted an affirmance of

12  Andrade's Three Strikes sentence.  Id. at 75-77.

13  In Ewing, the Supreme Court again reviewed the constitutionality of a Three Strikes

14  sentence of 25 years to life for stealing three golf clubs.  After reviewing the Court's Eighth

15  Amendment jurisprudence, the Court chose to adopt Justice Kennedy's view [5] that:

16  [There are] four principles of proportionality review-- the primacy of the
   legislature; the variety of legitimate penological schemes; the nature of our federal

17  system; and, the requirement that proportionality be guided by objective factors–
   that inform the final one: The Eighth Amendment does not require strict

18  proportionality between the crime and the sentence.  Rather, it forbids only
   extreme sentences that are 'grossly disproportionate' to the crime.

19  Ewing, at 23.

20  Recognizing that state legislatures have a right to formulate penological schemes

21  consistent with the state's policy goals and free from federal intrusion, the Court validated the

22  California Three Strikes law, stating "[s]electing the sentencing rationales is generally a policy

23  choice to be made by the state legislatures, not the federal courts." Id. at 25.  The Court deferred

24  to the California Legislature's policy judgement to enact a tough recidivism statute and held that

25  states have "a valid interest in deterring and segregating habitual criminals." Id. (citing Parke v.

26

27  _____

28  [5]As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)(citing Solem
   v. Helm, 463 U.S. 277, 288 (1983).

1    Raley, 506 U.S. 20, 27 (1992)).

2         In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n

3    weighing the gravity of Ewing's offense, we must place on the scales not only his current felony,

4    but also his long history of felony recidivism." Id. at 29.  The Court noted that "any other

5    approach would fail to accord proper deference to the policy judgments that find expression in

6    the legislature's choice of sanctions."  Id.  In imposing a Three Strikes sentence on a recidivist

7    criminal, the Court recognized the state's interest in dealing "in a harsher manner with those who

8    by repeated criminal acts have shown that they are simply incapable of conforming to the norms

9    of society as established by its criminal law."  Id. (citing Rummel v. Estelle, 445 U.S. 263, 276

10   (1980)).  Accordingly, proportionality review must take this interest into account.  Id.  The Court

11   held that Ewing's sentence of 25 years to life was justified by the State's public-safety interest in

12   incapacitating and deterring recidivist felons, and amply supported by Ewing's long, serious

13   criminal record.  Id.

14        In reviewing Petitioner's claim, this Court will begin with a brief overview of the Eighth

15   Amendment jurisprudence and the proportionality standard.  In Rummel, the Court upheld a life

16   sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75

17   by false pretenses, an offense normally punishable by imprisonment for two to ten years.

18   Rummel, 445 U.S. at 266, 100 S.Ct. at 1135.  However, because he had two prior felony

19   convictions (for fraudulent use of a credit card and passing a forged check), and had served two

20   prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which

21   carried a life sentence.  Id.  The Supreme Court held that Rummel's sentence of life

22   imprisonment with the possibility of parole did not violate the Eighth Amendment.  Id. at 265-

23   266 (emphasis added).  The Court noted that Rummel had suffered two separate convictions and

24   terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and

25   that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the

26   statute for "petty" offenders.  Id. at 278-81.

27        Three years later, the Supreme Court set forth the criteria for finding a sentence to be

28   cruel and unusual punishment under the federal Constitution and affirmed a decision of the

Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist.  <u>Solem v. Helm</u>, 463 U.S. 277, 103 S.Ct. 3001 (1983).  Defining a three-part proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated.  <u>Id</u>. at 279-81.  The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in <u>Rummel</u>, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all.  <u>Id</u>.

In <u>Harmelin</u>, the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense. 501 U.S. 957 (1991)(emphasis added).  The Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment. Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in <u>Solem</u>, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  <u>Id</u>. at 1005.

The majority of the justices in the <u>Harmelin</u> Court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly" rare.   The threshold for such an inference of disproportionality is high.  <u>See id</u>. at 1001 (Kennedy, J. concurring).  Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment. <u>United States v. McDougherty</u>, 920 F.2d 569, 576 (9th Cir. 1990).

The <u>Harmelin</u> Court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's

offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in Solem." Harmelin, 501 U.S. at 1002. Justice Kennedy further noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses. Id.

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

> [Petitioner] had two prior serious felony convictions, robberies, as well as a felony escape conviction. He had numerous probation violations and one parole violation. In addition, he suffered several misdemeanor convictions.

(Exhibit A, at 24.)

First, Petitioner argues that the prior convictions were not adequately proven. Second, Petitioner argues that the passage of Proposition 36 in California would result in a sentence of only probation, if he were sentenced today.

With regard to Petitioner's claim that the prior convictions were not adequately proven to the jury, it is without merit. In his second supplemental traverse, Petitioner contends that under California law an abstract of judgment is not adequate proof of a prior conviction, citing United States v. Navidad Marcos, 367 F.3d 903 (9th Cir. 2004). In the instant case, as Petitioner acknowledges in his second supplemental traverse, the prosecution submitted both the abstract of judgment and the signed plea form from Petitioner's 1983 robbery convictions. (CT 355-362.) Thus, the prosecution did not solely rely on the abstract of judgment as the basis for proving Petitioner's prior convictions. The case of Navidad-Marcos is distinguishable. There, the defendant was charged under a broad statute, which the information failed to narrow down to specific conduct. The abstract of judgment was not clear as to the charge of which Petitioner was convicted, resulting in the Court of Appeals finding that the abstract of judgment, alone, was insufficient to establish unequivocally that Navidad-Marcos has suffered the prior conviction. Here, there is no ambiguity as to the prior conviction charges. Moreover, Petitioner admitted that he suffered two prior 1983 robbery convictions. Based on the foregoing, there was sufficient evidence to support the jury's finding that Petitioner suffered two prior 1983 robbery convictions.

Second, Proposition 36, the Substance Abuse and Crime Prevention Act of 2000, was approved by the voters on November 7, 2000, and took effect on July 1, 2001. (Cal. Penal. Code §§ 1210, 1210.1.) Proposition 36 requires the court to grant probation and drug treatment to any defendant convicted of a nonviolent drug possession offense and prohibits incarceration as a condition of probation. (Cal. Penal. Code § 1210.1, subd. (a).) Petitioner contends that his punishment is grossly disproportionate under California law. Petitioner's contention is without merit. Even assuming this claim raises a federal constitutional violation and turning to California law for guidance, Petitioner would not be eligible for sentencing under § 1210, as he was convicted of a misdemeanor of driving with a suspended license in the same proceeding of his conviction for the nonviolent drug charge. See People v. Orabguena, 116 Cal.App.4th 84, 90-91 (C.A. 6 2004)(finding violation of California Vehicle Code section 14601 driving with a suspended license is a misdemeanor not related to the use of the drugs that excludes a defendant from Proposition 36); see also Cal. Pen. Code 1210.1, subd.(a).)

Turning to Petitioner's claim that his sentence constitutes cruel and unusual punishment, it is without merit. Petitioner's sentence of 25 years to life does not raise an inference of gross disproportionality to his crimes. Comparing Petitioner to the defendants in Rummel, Solem, Harmelin, Ewing, and Andrade reveals that the punishment was not cruel and unusual. In Rummel, the defendant's criminal history consisted of three non-violent theft or forgery offenses which, in total, resulted in a loss to the victims of about $280. Rummel, 445 U.S. at 266.

In Solem, the defendant had six prior felonies: three convictions for third-degree burglary, one in 1964, another in 1966, and the third in 1969; a fourth conviction in 1972 for obtaining money under false pretenses; a fifth conviction in 1973 for grand larceny; and a sixth conviction in 1975 for third-offense driving while intoxicated. His seventh felony for uttering a no account check for $100, and resulted in a sentence of life without parole. Solem, 466 U.S. at 279-281.

In Harmelin, the defendant was given a mandatory life without parole sentence for possession of over 650 grams of cocaine, his first felony offense. Harmelin, 501 U.S. at 961. The Supreme Court upheld the life sentence. Id. at 995-996.

In Ewing, the defendant suffered the following convictions: theft in 1984; felony grand

1  theft auto in 1988; petty theft with a prior in 1990; battery and theft in 1992; burglary in July

2  1993; unlawful possession of a firearm and trespass in September 1993; burglary and robbery in

3  October and November 1993; and trespass and lying to a police officer in December 1993.

4  Ewing, 538 U.S. at 18-19.

5        In Andrade, the defendant suffered a misdemeanor theft offense in January 1982; a

6  burglary in November 1982; transportation of marijuana in 1988; theft offense and transportation

7  of marijuana in 1990; and escape from federal prison in 1991. Andrade, 538 U.S. at 66-67.

8        Petitioner's criminal history is not minimal. In 1982, Petitioner was convicted of

9  trespass. (CT 189-190.) In 1983, Petitioner was convicted of two robberies. (Id.) Robbery is a

10  violent or serious offense within the meaning of the Three Strikes law. See Cal. Penal Code §§

11  667.5(c)(9), 1192.7(c)(19). The probation report reveals that Petitioner sustained convictions for

12  carrying a concealed weapon, driving under the influence, and trespassing. (CT 169.) Petitioner

13  also admitted to being convicted of escape. (RT 212-213.) As detailed by the trial court,

14  Petitioner violated his probation on March 12, 1985, March 14, 1989, November 7, 1989, and got

15  another conviction on June 11, 1989, and violated probation again on October 22, 1990.

16  (11/6/96 RT 3.) Thus, he has violated probation or parole no less than five times during a five

17  year period. (Id.)

18        Further, in the instant case, Petitioner was found guilty of possession of

19  methamphetamine. Petitioner's crime is more serious than the underlying offenses in the cases

20  discussed above. Petitioner's crime is more serious than Rummel's crime of obtaining $120.75

21  by false pretenses. Rummel, 445 U.S. at 266. His crime is also more serious than Solem's crime

22  of uttering a "no account" check for $100.00. Solem, 463 U.S. 279-281. Petitioner's offense is

23  also more serious than the thefts in Ewing and Andrade. Ewing, 538 U.S. at 19; Andrade, 538

24  U.S. at 67. Petitioner's crime, although less serious, is on the same level as the defendant in

25  Harmelin, and the Supreme Court upheld the life sentence. As Justice Kennedy stated in

26  Harmelin, Petitioner's current offense reflects a continuing pattern of behavior that "threaten[s]

27  to cause grave harm to society." Harmelin, 501 U.S. at 1002. In sum, the circumstances of

28  Petitioner's prior and current convictions fall somewhere between the facts of relevant Supreme

26

1  Court precedent, and the state court's decision upholding Petitioner's sentence is not contrary to

2  or an unreasonable application of clearly established Supreme Court precedent.

3          To the extent Petitioner contends that the use of his prior convictions to enhance his

4  current conviction violate the Ex Post Facto Clause of the United States Constitution, it is

5  without merit.  The ex post facto clause prohibits a state from enacting a law that imposes

6  additional punishment for a crime than the punishment was when the defendant committed the

7  crime.  Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964 (1981).  A law violates the ex

8  post facto clause under three circumstances:  (1) when it punishes a act which was not a crime

9  when it was committed; (2)  when it makes a crime's punishment greater than when the crime

10 was committed; or (3) when it deprives a person of a defense available at the time the crime was

11 committed.  Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719 (1990).  A statute

12 enhancing a defendant's sentence because the defendant is a recidivist does not punish the

13 defendant again for the prior offense.  Wittie v. United States, 515 U.S. 389, 400, 115 S.Ct. 2199,

14 2206 (1995).  Recidivist statutes have been upheld in the face of ex post facto arguments even if

15 the convictions used to enhance the sentence occurred before the recidivist statute was enacted.

16 See,  United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir. 1989) (*per curiam*)

17         Here, as explained above, in 1983, Petitioner was convicted of two robberies.  (Id.)

18 Robbery is a violent or serious offense within the meaning of the Three Strikes law.  See Cal.

19 Penal Code §§ 667.5(c)(9), 1192.7(c)(19).  Although the prior convictions occurred prior to

20 1994, the use of these convictions under Three Strikes law does not violate the ex post facto

21 clause.  The Ninth Circuit has held that the use of a pre-1994 strike to enhance a sentence does

22 not violate the ex post facto clause as long as the triggering offense was committed after March

23 1994, when Three Strikes was enacted. United States v. Sorenson, 914 F.2d 173, 174 (9th

24 Cir.1990); United States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir.1984) (*per curiam*).

25 Petitioner committed the triggering offense in 1996, after Three Strikes was enacted, and

26 therefore the use of the pre-1994 priors to enhance his sentence did not violate the ex post facto

27 clause.  Accordingly, Petitioner's claim must fail.

28

1

<u>ORDER</u>

2

Based on the foregoing, it is HEREBY ORDERED that:

3

1.      The petition for writ of habeas corpus is DENIED; and

4

2.      The Clerk of Court is directed to enter judgment in favor of Respondent.

5

IT IS SO ORDERED.

6

**Dated:     November 29, 2005**                          **/s/ Dennis L. Beck**

3b142a                                              UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28